UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA RUIZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CONAGRA FOODS PACKAGED FOODS, LLC,<br><br>　　　　　Defendant. | No. 2:24-cv-02374-DAD-CSK<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. No. 19) |

This matter is before the court on plaintiff's motion to remand this action to the Stanislaus County Superior Court. (Doc. No. 19.) The pending motion was taken under submission on the papers on June 6, 2025. (Doc No. 21.) For the reasons explained below, plaintiff's motion to remand will be denied.

**BACKGROUND**

On July 24, 2024, plaintiff Margarita Ruiz, on behalf of herself and all other current and former non-exempt California employees of defendant, filed a complaint initiating this action in the Stanislaus County Superior Court against Conagra Foods Packaged Foods, LLC ("defendant") and unnamed defendants Does 1 through 100. (Doc. No. 1-1 at ¶¶ 1, 3–4.) As relevant to this order resolving the pending motion, plaintiff's complaint alleges as follows.

/////

1

1  Plaintiff and class members, or some of them, at times, worked shifts of more than eight
2  hours, and/or of more than forty hours per workweek, and/or seven straight workdays without
3  payment of proper overtime wages due to defendant's failure to accurately track and/or pay for all
4  hours worked. (*Id.* at ¶ 38.) Defendant gained a competitive advantage due to its unlawful
5  business practices in this regard. (*Id*. at ¶ 101.) Plaintiff seeks to represent "all current and
6  former non-exempt employees of Defendants within the State of California" commencing four
7  years preceding the filing of plaintiff's complaint "until the time that notice of the class action is
8  provided to the class." (*Id*. at ¶ 24.)

9  Based on these and other allegations, plaintiff asserts the following causes of action:
10 (1) failure to pay overtime wages at the proper rate in violation of California Labor Code §§ 510,
11 1194; (2) failure to pay minimum wages in violation of California Labor Code § 1197; (3) failure
12 to provide meal periods and pay missed meal periods in violation of California Labor Code
13 §§ 512, 226.7; (4) failure to provide rest periods and pay missed rest periods in violation of
14 California Labor Code § 226.7; (5) failure to pay all wages due upon termination in violation of
15 California Labor Code §§ 201, 202; (6) failure to provide accurate wage statements in violation of
16 California Labor Code § 226; (7) failure to pay timely wages during employment in violation of
17 California Labor Code § 204; (8) failure to reimburse for losses and expenditures in violation of
18 California Labor Code § 2802; (9) failure to pay for unused vacation in violation of California
19 Labor Code § 227.3; and (10) violation of California's Unfair Competition Law, Business and
20 Professions Code §§ 17200, *et seq.* (*Id*. at ¶¶ 34–103.)

21 On August 30, 2024, defendant removed the action to this federal court pursuant to 28
22 U.S.C. §§ 1332(d), 1441(a) and (b), and 1446 on the grounds that this court has jurisdiction
23 pursuant to the Class Action Fairness Act ("CAFA"). (Doc. No. 1 at 2.) On May 27, 2025,
24 plaintiff filed the pending motion to remand this action to the Stanislaus County Superior Court.
25 (Doc. No. 19.) On July 10, 2025, defendant filed its opposition to the motion, and its request for
26 judicial notice. (Doc. Nos. 24, 24-2.) On July 17, 2025, plaintiff filed her reply, her opposition to
27 defendant's request for judicial notice, and her own request for judicial notice. (Doc. Nos. 25, 25-
28 1.)

2

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only where authorized by the Constitution and Congress. *See Kokkonem v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Unless otherwise limited, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Through CAFA, Congress broadened federal diversity jurisdiction over class actions . . . ." *Mondragon v. Cap. One Auto Fin*, 736 F.3d 880, 882 (9th Cir. 2013).

Under CAFA, federal courts have jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court." *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89. However, "[t]he rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1453(c)(1)).

**DISCUSSION**

Defendant removed this putative class action pursuant to CAFA, arguing that there is minimal diversity, the putative class exceeds 100 members, and the amount in controversy in this action is $8,449,395.[1] (Doc. No. 1 at ¶¶ 16–19, 26, 44.) In her motion to remand, plaintiff argues that defendant has failed to prove diversity of citizenship, failed to prove CAFA's amount in controversy by relying on arbitrary assumptions to calculate the amount in controversy, failed to

---

[1] In defendant's opposition to the pending motion to remand, they calculate the amount in controversy to actually be between $14,364,799.06 and $51,170,871.04. (Doc. No. 24 at 25.)

3

prove plaintiff alone has put $75,000 in controversy in bringing this action,[2] and that the court lacks subject matter jurisdiction over plaintiff's equitable claims. (Doc. No. 19 at 13–19.)

### A. Minimal Diversity of Citizenship

Plaintiff first argues that defendant has failed to show diversity of citizenship by a preponderance of the evidence. (*Id*. at 21–23.) Plaintiff argues that as a limited liability company ("LLC"), defendant's citizenship is governed by 28 U.S.C. § 1332(d)(10). (*Id.* at 23.) Defendant does not dispute that its citizenship is determined by the citizenship of its members. (Doc. No. 24 at 6.) Defendant asserts, supported by the declaration of Human Resources Director Simmie Buehler, that it is a Delaware limited liability company and "its sole member is ConAgra Packaged Foods Holdings, Inc., a Delaware corporation with its headquarters in Illinois." (Doc. No. 24-1 at 2); *see* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]"). Plaintiff alleges in her complaint that she is a resident of California. (Doc. No. 1-1 at 6.) Plaintiff does not dispute defendant's asserted citizenship in her reply, nor does she offer contrary evidence. (Doc. No. 25.) Therefore, the court finds that minimal diversity has been established.[3] 28 U.S.C. § 1332(d)(2).

### B. Amount in Controversy

Plaintiff next argues that (1) defendant did not produce evidence in its removal petition establishing that the amount in controversy in this action is greater than $5 million, and (2) defendant's calculations of the amount in controversy reflected in its removal petition were speculative and unsupported. (Doc. No. 19 at 23, 25.) In her reply, plaintiff specifically

---

[2] Plaintiff argues that in addition to being unable to establish jurisdiction under CAFA, defendant cannot establish diversity jurisdiction under 28 U.S.C. § 1332(a) because defendant has not presented facts to support that the amount in controversy exceeds $75,000 as to plaintiff alone, and that the California Labor Code violations as to each class member cannot be aggregated to reach requisite amount in controversy because, as plaintiff argues, they are individually held rights. (Doc. No. 19 at 31–32.) However, the court ultimately does not address this argument because jurisdiction has been established under CAFA.

[3] There is also complete diversity because defendant Conagra Foods Packaged Foods, LLC is the sole named defendant in this action, and where the action is removed, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

challenges defendants' assumptions underlying the class size and violation rates. (Doc. No. 25 at 6–7.)

As noted, in its opposition to plaintiff's motion to remand defendant estimates that the amount in controversy in this case is between $14,364,799.06 and $51,170,871.04. (Doc. No. 24 at 25.) These estimates include estimates of unpaid overtime, meal periods, rest breaks, untimely payment of wages during employment, waiting time penalties, wage statements, and attorneys' fees. (*Id.*)

1. Defendant's Evidence

Plaintiff argues that her motion to remand should be granted because defendant did not produce evidence in its removal petition to support removal. (Doc. No. 19 at 23.) It is true that defendant did not provide a declaration or other similar evidence in support of its removal petition. (Doc. No. 1.) However, with its opposition to remand, defendant has submitted the declaration of Simmie Buehler, a human resources director employed with Conagra Brands, Inc., a parent corporation of ConAgra Foods Packaged Foods, LLC. (Doc. No. 24-1 at ¶ 1.)

Moreover, in its notice of removal defendant was required only to include, "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (citing *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997)); *see also Rubel v. U.S. Nursing Corp.*, No. 1:23-cv-01664-JLT-CDB, 2025 WL 892816, at *8 (E.D. Cal. Mar. 24, 2025) ("After *Garibay*, the Ninth Circuit held that a declaration may be sufficient evidence to support removal, without additional evidentiary submissions.").

As stated above, defendant has submitted the declaration of Human Resources Director Buehler in support of its opposition to plaintiff's motion to remand. (Doc. No. 24-1.) Ms. Buehler declares that she has personal knowledge of the stated matters based on her "review and knowledge of [defendant] ConAgra's relevant business records," as well as defendant's record-

1 creation and record-keeping policies. (Doc. 24-1 at ¶ 2.) In reply, plaintiff does not dispute that
2 this evidence may be considered in support of defendant's calculations as to the amount in
3 controversy. (Doc. No. 25.) Therefore, the court finds that defendant has produced the type of
4 evidence necessary to support its removal petition.

        2.      <u>Class Size</u>

Plaintiff asserts in her reply that defendant's assumptions regarding class size are unreasonable because the class size is limited by settlements in two different class action wage and hour cases. (Doc No. 25 at 6–7.) In plaintiff's complaint, the class is defined as "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiffs complaint up until the time that notice of the class action is provided to the class." (Doc. No. 1-1 at ¶ 24.) Defendant has identified 1,767 putative class members by determining the number of unique individuals employed by defendant in full-time, non-exempt positions from July 24, 2020, through June 9, 2025. (Doc. No. 24-1 at ¶ 6.)

The plaintiff is generally the "master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, (1987). As the master of the claim, plaintiff defined the class size and has not moved to amend the complaint. Settlements in other cases may affect the ultimate recoverable amount, but they do not affect plaintiff's definition of the class nor the number of class members that fit within such definition. "The strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019).

/////
/////
/////
/////
/////
/////
/////

The court therefore rejects plaintiff's contention that defendant's estimated amount in controversy in this action is based on an unreasonable class size due to the settlement of different wage and hour class actions.[4] *See Sanchez v. DSV Solutions, LLC*, 23-cv-01112-PA-SP, 2023 WL 5277889, at *3 (C.D. Cal. Aug. 15, 2023) (rejecting the plaintiff's suggestions that a different wage and hour class action settlement limited the class period).

        3.      Unpaid Overtime

Defendant has calculated the amount in controversy as to plaintiff's unpaid overtime claim to be between $747,754.65 and $7,477,546.47 based on the evidence discussed above and two assumptions—(1) that the typical shift for full-time employees is at least eight hours per day and forty hours per week; and (2) that each class member suffered somewhere between one hour of unpaid overtime every ten weeks and one hour of unpaid overtime every week. (Doc. No. 24 at 13–14.)

Plaintiff asserts that the assumption and violation rates used by defendant are unsupported by the language of her complaint or other extrinsic evidence. (Doc. No. 25 at 9.) Plaintiff specifically argues it is unreasonable for defendant to assume that every shift was over five hours. (Doc. No. 19 at 26.) Plaintiff also argues that defendant's violation rate range is arbitrary and not supported by the language of plaintiff's complaint. (Doc. No. 25 at 8–9.)

"[A] removing defendant is permitted to rely on a chain of reasoning that includes assumptions." *Arias*, 936 F.3d at 925 (citation omitted). "Such assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* (citation omitted). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* (citation omitted).

---

[4] Plaintiff has requested that the court take judicial notice of specific documents from these other class actions involving defendant Conagra, *Hilda Alvarez v. Conagra Foods Packaged Foods, LLC and Conagra Brands Inc.*, No. 21STCV37375, Los Angeles Cnty. Superior Court and *Moises Negrete et. al. v. ConAgra Foods Inc. et. al.*, No. 2:16-cv-000631-FMO-AJW (C.D. Cal. Feb. 7, 2022). (Doc No. 25-1.) "A court may decline to take judicial notice of irrelevant documents." *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 n.7 (9th Cir. 2000). Therefore, the court declines to take judicial notice of these documents as they are simply not relevant to resolution of the pending motion.

7

"What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). For example, when the number of employees in a wage and hour class action is in dispute, it "may make sense to expect a defendant to introduce evidence" of that number because it can easily be "determined by examining the defendant's employment records." *Id.* In contrast, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the alleged violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id.* In these instances, "a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.* (emphasis omitted).

        a.    *Defendant's Assumption that Every Shift was Over Eight Hours*

Ms. Buehler declares that there are 1,767 current and former employees making up the putative class and that these employees were divided into regular full-time employees or seasonal full-time employees.[5] (Doc. No. 24-1 at ¶ 6.) She further declares that the typical shift for full-time employees is at least eight hours per day and forty hours per week. (*Id.* at ¶ 7.) The court finds it reasonable to assume that every shift was over eight hours based on Ms. Buehler's declaration of the typical workday and defendant's assertion, supported by Ms. Buehler's declaration, that all potential class members worked full time. *See Marron v. HealthSource Glob. Staffing, Inc.*, No. 19-cv-01534-KAW, 2019 WL 4384287, at *6 (N.D. Cal. Sept. 13, 2019) (crediting defendant's assertion that each worker "typically worked at least 8 hours per day" when assessing the reasonableness of defendant's assumption that each worker would have missed at least one hour of overtime per week); *cf. Alvarado v. Scholle IPN Packaging, Inc.,* No. 1:19-cv-01673-AWI-SKO, 2020 WL 6537652, at *4 (E.D. Cal. Nov. 6, 2020) (noting that the court could not assess the reasonableness of defendant's assumptions without providing the typical length of the workweek).

---

[5] The court notes that plaintiff's complaint does not allege that the class is limited to full-time employees, but defendant asserts that the 1,767 employees who make up the potential class were full-time employees or seasonal full-time employees. (Doc. Nos. 1-1 at ¶ 24; 24 at 13; 24-1 at ¶ 6.)

b.     *Defendant's Assumed Violation Rates*

The complaint alleges that "Plaintiff and Class Members, at times," worked overtime hours without being paid overtime wages for all hours worked; that this was a result of defendant's "failure to accurately track and/or pay" for all hours worked at the proper overtime rate; and that "on occasion" defendants accordingly violated California Labor Code §§ 510, 1194. (Doc. 1-1 at ¶ 38–39).  In the complaint's "Statement of Facts," plaintiff regularly uses the phrase, "Plaintiff and Class Members, or some of them." (Doc. No. 1-1 at ¶¶ 12–18.) This phrasing is not repeated, however, in the specific causes of actions. (Doc. No. 1-1 at ¶¶ 34–103.) Plaintiff asserts that this phrasing does not support defendants' assumption that every putative class member experienced violations for the duration of the class period. (Doc. No. 19 at 16.)

When a complaint uses language such as "at times" to describe the frequency of unpaid overtime violations, it is reasonable to assume that, every week during the class period, the defendant failed to pay one hour of overtime pay. *See Carroll v. Ameri-Force Craft Servs., Inc.*, No. 24-cv-1443-RSH-DTF, 2025 WL 2621704 at *5 (S.D. Cal. Sept. 11, 2025) (noting that "numerous" district courts have held that it is reasonable to assume at least one violation per week of various wage and hour claims when complaints use "at times" or similar language); *see also Cabrera v. S. Valley Almond Co., LLC,* No. 1:21-cv-00748-AWI-JLT, 2021 WL 5937585 at *8 (E.D. Cal. Dec. 16, 2021) (finding that an assumption of one hour of unpaid overtime per week is consistent with "at times" and "on occasion"). "[T]he phrase 'at times' could support a lower violation rate as easily as it could support" the assumed rate but "that does not automatically render" the assumed rate unreasonable. *Perez*, 131 F.4th at 810 (noting that plaintiff was free to propose another rate or use more specific language in the complaint). The court also notes that defendant is not "required to comb through its records to identify and calculate the exact frequency of violations." *Lopez v. Aerotek, Inc.*, No. 14-cv-00803-CJC, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015).

Like the "at times" language, the "or some of them" language lends itself to multiple reasonable interpretations, one of which is that all class members were affected. *See Perez v. Rose Hills Co.*, No. 2:24-cv-04827-JLS-PVC, 2025 WL 2631603 at *4 (C.D. Cal. Aug. 29, 2025)

9

(noting that "'or' preserves the possibility that the violations were suffered by all class members."). Plaintiff chose to plead the alternatives, that plaintiff and class members, or some of them, suffered violations. (Doc. No. 1-1 at ¶ 12.) As has been recognized:

> The amount in controversy "reflects the *maximum* recovery the plaintiff could reasonably recover," *Arias*, 936 F.3d at 927, given the "amount at stake in the underlying litigation' based on what the plaintiff has alleged. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). Assuming to be true the allegation that plaintiff and the class suffered the violations, the maximum amount in controversy includes damages based on violations as to all class members. *Demeria v. Big Lots Stores – PNS, LLC*, No. 2:23-cv-00296-DJC-CKD, 2023 WL 6390151, at *6 (E.D. Cal. Sept. 29, 2023).

*Chavoya v. Merrill Gardens L.L.C.*, No. 1:24-cv-00268-KES-BAM, 2024 WL 3219724 at *8 (E.D. Cal. June 28, 2024) (holding it was reasonable for the defendant to assume the alleged violations, including failure to pay overtime wages, occurred to each potential class member when plaintiff alleged "Plaintiff and the Class, or some of them").

Defendant estimates the amount in controversy with four different violation rates: one hour of unpaid overtime per week per employee (a twenty percent rate), one hour of unpaid overtime every two weeks per employee (a ten percent rate), one hour of unpaid overtime per every five weeks per employee (a five percent rate), and one hour of unpaid overtime every ten weeks per employee (a one percent rate). (Doc. No. 24 at 13–14.) Based on the language of the allegations of plaintiff's complaint, the court finds that the one hour per week violation rate is reasonable.

Assuming one (1) hour of unpaid overtime per employee per week, defendant estimates the amount in controversy as to the unpaid overtime claim is $7,477,546.47. (Doc. No. 24 at 13.) Defendant calculates this as follows: "1 hour of unpaid overtime per week x 182,890.85 weeks worked x $40.89 per hour overtime rate." (*Id.*) Defendant calculated the weighted average pay rate by determining the hourly rates of each putative class member for the relevant period, then multiplying those rates by the total weeks worked by each employee and then dividing the total across all employees by the number of weeks within the applicable period. (Doc. No. 24-1 at ¶ 11.) The average overtime rate was calculated by multiplying the average pay rate by 1.5. (*Id.*)

10

1    The 182,890.85 weeks worked is the total number of weeks worked by the putative class

2    members based on their dates of employment from July 24, 2020, to July 10, 2025.  (*Id*. at ¶ 8.)

3         Based on defendant's evidence and reasonable assumptions drawn, the amount in

4    controversy as to plaintiff's unpaid overtime claim alone surpasses $5,000,000 and satisfies

5    CAFA.[6]  Accordingly, the court need not calculate the amount in controversy associated with

6    plaintiff's remaining claims.  Similarly, the court need not address plaintiff's argument that

7    defendant failed to prove that plaintiff alone put $75,000 at issue to satisfy diversity jurisdiction

8    because jurisdiction has been established under CAFA.

9    **C.    Jurisdiction Over Equitable Claims**

10        Plaintiff argues that the court lacks jurisdiction over plaintiff's Unfair Competition Law

11   ("UCL") claims requesting "restitution for unpaid wages" because plaintiff has not alleged the

12   inadequacy of a legal remedy.  (Doc. No. 19 at 32.)  Plaintiff, therefore, requests that the entire

13   action be remanded.  (*Id*.)  Plaintiff states that she does not and cannot "plead facts in the

14   Complaint sufficient to allow a federal court to grant or deny her substantive state-law claim for

15   equitable relief."  (*Id*.)  Defendant responds by stating that lack of equitable jurisdiction over

16   some claims is not a basis for remanding the entire case.  (Doc. No. 24 at 24.)  Defendant does

17   not request dismissal of the UCL claim, and plaintiff specifically argues that the court should not

18   dismiss her UCL claim.  (Doc. No. 19 at 34.)

19        "[T]he presence of at least some claims over which the district court has original

20   jurisdiction is sufficient to allow removal of an entire case, even if others of the claims alleged are

21   beyond the district court's power to decide."  *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002–03

22   (9th Cir. 2001) (citing *Kruse v. State of Hawaii*, 68 F.3d 331, 334–35 (9th Cir. 1995)); *see also*

23   *Jinhui Kim v. Walmart, Inc.*, No. 2:22-cv-08380-SB-PVC, 2023 WL 196919 (C.D. Cal. Jan. 13,

24   /////

---

[6] Defendant requested that the court take judicial notice of a "PAGA Letter" to support the reasonableness of its assumed violation rates. (Doc. No. 24-2.) As noted above, "[a] court may decline to take judicial notice of irrelevant documents." *See Santa Monica Food Not Bombs*, 450 F.3d at 1025 n.2; *Flick*, 205 F.3d at 392 n.7 (9th Cir. 2000). Therefore, the court declines to take judicial notice of these documents because defendant's relevant assumptions are reasonable based on the language employed in the allegations of the complaint.

11

2023).  Therefore, the court declines to remand the entire action to state court as requested by plaintiff.

Neither party has addressed in their briefing whether they would request relief in the form of a dismissal of the UCL claim without prejudice or the severance of that claim with it alone being remanded to state court.  *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1315 (9th Cir. 2022) (holding that the district court should have denied summary judgement on the UCL claim and dismissed it without prejudice for lack of equitable jurisdiction); *see also Avery v. TEKsystems, Inc.*, No. 22-cv-02733-JSC, 2025 WL 2837786 at *3 (N.D. Cal. Oct. 7, 2025) (granting plaintiff's request to sever and remand a UCL claim when defendant declined to waive the issue of whether an adequate-remedy-at-law existed).  The issue before the court is plaintiff's motion to remand the entirety of this action to state court.  Because the court would not remand this action regardless of whether equitable jurisdiction exists, the court need not and does not reach the question of equitable jurisdiction over plaintiff's UCL claim at this time.  *See Ruiz v. Bradford Exchange, Ltd.*, 153 F.4th 907, 916 (9th Cir. 2025) (stating that treating the adequate-remedy-at-law issue as a non-waivable defect would "wrongly align the doctrine of equity jurisdiction with subject matter jurisdiction, contrary to precedent.  And it would wrongly imply that, as with subject matter jurisdiction, district courts have an independent obligation to assess equitable jurisdiction—which we have never held.").

**CONCLUSION**

For the reasons set forth above,

1. Plaintiff's motion to remand (Doc. No. 19) is DENIED;

2. Defendant's request for judicial notice (Doc. No. 24-2) is DENIED; and

3. Plaintiff's request for judicial notice (Doc. No. 25-1) is DENIED.

IT IS SO ORDERED.

Dated:  **November 6, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

12